UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————X

<u>Garfield G. Henry</u>

                    Plaintiff,                                    COMPLAINT

        -against-                                              Jury Trial Demanded

<u>Mahopac Central School District</u>

                    Defendant

——————————————————————X

> RECEIVED
> NOV 29 2021
> U.S.D.C.
> W.P.

        I, Garfield G. Henry hereby make a complaint against Mahopac Central School
District, charging them with employment discrimination. Attached please find exhibits
that will show what I am charging them with. I will be seeking $125,000.00 for pain and
suffering, emotional distress causing fear, anxiety, crying, lack of sleep, depression and
humiliation.

Exhibit 'A' will show the Right to sue letter I received from Equal Employment
Opportunity Commission (EEOC)

Exhibit 'B' will show the respondent response they gave after I file my complaint with the
New York State Division of Human Rights.

Exhibit 'C' will show my rebuttal to Mahopac Central School District's response.

Exhibit 'D' will show the decision by the New York State Division of Human Rights that
**PROBABLE CAUSE** exists to believe that the Respondent has engaged in or is
engaging in unlawful discriminatory practice complained of.

At that point an administrative law judge tried to get the defendant to agree to a
settlement, but they refused after the conferrence.

Exhibit 'E' will show I made a request to the Division of Human Rights for an
Administrative Convenience Dismissal (ACD) so that I could take this case to federal
court.

Exhibit 'F' will show the letter I received from the Division of Human Rights administrative law judge, granting my request that also shows all the parties agreeing to allow my request for the administrative convenience Dismissal (ACD).

Respectfully submitted

Garfield G. Henry

# Exhibit
# A

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:   **Garfield G. Henry**
      **P.O. Box 235**
      **Mohegan Lake, NY 10547**

From:   **New York District Office**
        **33 Whitehall Street**
        **5th Floor**
        **New York, NY 10004**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2019-04749** | **Holly M. Shabazz,** **State & Local Program Manager** | **(929) 506-5316** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Judy A. Keenan*

September 3, 2021

Enclosures(s)

**Judy A. Keenan,**
**District Director**

(Date Issued)

cc:

**Attn: Director of Human Resources**
**MAHOPAC CENTRAL SCHOOL DISTRICT**
**179 E. Lake Boulevard**
**Mahopac, NY 10541**

# Exhibit
# B

**SILVERMAN** | ATTORNEYS
**&ASSOCIATES** | AT LAW

October 16, 2019

**Via E-Mail & Federal Express**
Linda Fenstermaker
Regional Director
New York State Division of Human Rights
7-11 South Broadway, Suite 314
White Plains, New York 10601

Re:   *Garfield G. Henry v. Mahopac Central School District*
Case No.: 10203286

Dear Ms. Fenstermaker,

We represent the respondent, Mahopac Central School District ("the District"), in the above-referenced matter. This correspondence shall constitute the District's Answer and Response to the Verified Complaint ("the Complaint") of Garfield G. Henry ("the Complainant"), dated August 22, 2019. The Complaint alleges that the District discriminated against the Complainant based on race/color by failing to hire him for the position of Bus Driver.[1]

The District denies each and every allegation of discrimination set forth in the Complaint since there is no basis in law or fact to support such allegations. The Complainant has not established any facts to support his allegations that the District discriminated against him in violation of the New York State Human Rights Law ("NYSHRL") or Title VII of the Civil Rights Act of 1964 ("Title VII"). As is more fully discussed below, the Complainant has not been discriminated against by the District, and rather, the District has treated the Complainant lawfully and fairly.

## FACTUAL BACKGROUND

### Bus Driver Hiring Process

The District operates its own transportation program and hires three kinds of Bus Drivers: full-time, part-time and per diem. Full-time and part-time Bus Drivers are unionized under the United School Workers of Mahopac ("USWOM"). As such, the terms and conditions of their employment, including hiring and promotions are determined by their Collective Bargaining Agreement ("CBA").[2] When a full-time or part-time Bus Driver position becomes vacant, pursuant to the USWOM CBA, "applicants who are employees of the District are considered for the opening

---

[1] A copy of the Complaint has been attached as Exhibit "A"
[2] A copy of the United School Workers of Mahopac Collective Bargaining Agreement has been attached as Exhibit "B"

*Henry v. Mahopac CSD*
*Case No.: 10203286*
*October 16, 2019*
*Page No.: 2*

before outside applicants are considered." (Exhibit B, Article IX(D)(2)). Applicants are then evaluated based on factors such as competency, required skills, prior performance and attendance record. If all of these factors are equal amongst applicants, the District uses seniority to appoint an individual to the vacancy. Per diem Bus Drivers, however, are not unionized and are hired from a pool of applications received by non-employees. The District currently employs 76 bus drivers[3], of which 23 are full time[4], 52 are part time[5], and two are per diem.

The District is an Equal Opportunity Employer and pursuant to its EEO Policy, does not discriminate against any employee or applicant on the basis of race, color, national origin, creed, religion, marital status, sex, sexual orientation, age or disability.[6] As such, the District does not request or consider the race or color of any of its applicants at any point during the employment process. In fact, the District uses the Putnam County, NY Application for Examination and Employment for all per diem Bus Driver applications.[7] As is evident, this application form does not ask the applicant for any demographical information, including race or color. Therefore, the District does not have a record of the race/color of any of its Bus Drivers.

The District includes an instructional cover sheet with its Bus Driver applications, and the entire application package is made available in the District's Transportation Unit Office and Human Resources Office all year round and reviewed on an ongoing basis. Any individual that walks into either location and inquires about a Bus Driver position with the District is provided the Bus Driver Application Package. The accompanying instructions explicitly ask all applicants to return the completed form to the Human Resources Office at 179 East Lake Boulevard. Based on the staffing needs of the District, the Human Resources Office, in conjunction with the Transportation Office review applications in the order in which their applications were received. Only when the District needs to hire a per diem Bus Driver does the District identify applicants that meet the qualification requirements and contact them to proceed with the hiring process for a per diem Bus Driver position.

Hiring Per Diem Bus Drivers in 2019

Most recently, in early 2019, the District hired two per diem Bus Drivers from its pool of outside applicants. On February 28, 2019, the District hired Medhat Fanous (presumed to be Middle Eastern) based on his application received on October 16, 2018.[8] Then, on April 26, 2019, the District hired Jessica Sanchez (presumed to be Hispanic) based on her application received on October 18, 2018.[9] The District has not hired any per diem Bus Drivers since April 26, 2019.

---

[3] A copy of the personnel chart for all of the District's Active Bus Drivers has been attached as Exhibit "E"

[4] A copy of the personnel chart for all of the District's Full-Time Bus Drivers has been attached as Exhibit "C." Note that the list and "Total Number of Employees" includes eight Bus Mechanics in addition to Full-Time Bus Drivers.

[5] A copy of the personnel chart for all of the District's Part-Time Bus Drivers has been attached as Exhibit "D"

[6] A copy of the District's EEO Policy has been attached as Exhibit "F"

[7] A copy of the District's Bus Driver Application Package has been attached as Exhibit "G"

[8] A copy of Mr. Fanous's Application has been attached as Exhibit "H"

[9] A copy of Ms. Sanchez's Application has been attached as Exhibit "I"

*Henry v. Mahopac CSD*
*Case No.: 10203286*
*October 16, 2019*
*Page No.: 3*

(Exhibit M). Significantly, several other individuals in addition to the Complainant applied since that time and they have also not been hired as per diem Bus Divers. The District presumes these individuals to be of other races/colors than the Complainant.

The Complainant is not currently employed by the District in any capacity. Contrary to Complainant's allegations, the District did not receive an application from Complainant on May 10, 2019. Nor did the District intentionally destroy any application of the Complainant. Rather, on June 4, 2019, Complainant completed an application for a Bus Driver position and returned it to the Transportation Unit Office.[10] Then again on July 7, 2019, Complainant completed a second application for a Bus Driver position and returned it to the Transportation Unit Office.[11] Complainant failed to follow the application instructions and submitted both applications to the Transportation Unit rather than the Human Resources Office.[12] Yet, the District has maintained Complainant's applications amongst all applications received between February 2019 and September 2019, for consideration in future per diem Bus Driver vacancies.[13]

## LACK OF EVIDENCE OF DISCRIMINATION

As can be seen above, there is absolutely no evidence of any discrimination. To the extent that the complainant alleged discrimination, the case facts establish that he cannot make out a claim for discrimination. In order to establish a *prima facie* case of hiring discrimination, the Complainant must present evidence of four elements: "(1) that he belonged to a protected class; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that despite being qualified, he was rejected; and (4) that after his rejection, the position remained open or was filled by someone that was not a member of his protected class." *Gaffney v. Dep't of Info. Tech. & Telecommunications*, 536 F. Supp. 2d 445, 462 (S.D.N.Y. 2008) citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973) (finding that plaintiff met his prima facie burden in part because the employer sought mechanics, which was plaintiff's trade, and continued to do so after plaintiff was rejected); see also *Marshall–Screen v. Internal Revenue Serv.*, No. 01 Civ. 811, 2002 WL 264999 (E.D.N.Y. Feb.26, 2002). The Complainant has not and cannot establish the second, third or fourth *prima facie* elements.

The second prima facie element requires a showing that Complainant applied and was qualified for a job for which the employer was seeking applicants. At the time of Complainants applications, the District was not actively seeking Bus Drivers. In fact, the instructions for the application completed by Complainant explicitly stated that the District "is continuously accepting applications for School Bus Drivers, [and that] based upon the current staffing needs of the District,

---

[10] A copy of Complainant's June 4, 2019, application has been attached as Exhibit "J"

[11] A copy of Complainant's July 7, 2019, application has been attached as Exhibit "K"

[12] Note that Complainant's two applications contain discrepancies. Specifically, pursuant to the application instructions, Complainant fails to provide an explanation for discharge from prior employment on his first application but provides his explanation on the second application. Further, the dates of employment with his prior employers are also inconsistent between the two applications.

[13] A copy of all per diem Bus Driver Applications received by the District between February 2019 and September 2019 has been attached as Exhibit "L"

*Henry v. Mahopac CSD*
*Case No.: 10203286*
*October 16, 2019*
*Page No.: 4*

applicants will be contacted to move forward in the hiring process." (Exhibit G). Simply because the District accepts completed applications on ongoing basis does not mean that the District is continuously hiring or even has vacancies available.

Since 2018, the District has hired a total of nine per diem Bus Drivers. Based on the needs of the District in early 2019, the District hired exactly two per diem Bus Drivers: Medhat Fanous and Jessica Sanchez. (Exhibit M). At that time, the District was still reviewing applications received in October 2018, because per diem applications are reviewed in the order that they are received. Despite receiving their applications only two days apart, due to the needs of the District, Ms. Sanchez was hired nearly two months after Mr. Fanous. (Compare Exhibit H to Exhibit I). The District has not hired any applicants or had any vacancies for per diem Bus Drivers since April 2019. Therefore, Complainant has failed to show that the District was hiring for a Bus Driver position at the time of his application.

The third prima facie element requires a showing that despite being qualified, Complainant was rejected. According to the Complainant's own allegations, the District has not even had a chance to evaluate his qualifications with a road skills test, let alone reject his application despite being qualified. (Exhibit A at 4). Quite tellingly, the Complainant has not plead a single fact to suggest that his application was rejected. See *Pierson v. New York City Department of Education*, No. 105088/06, 2011 WL 6297955 (N.Y. Sup. Ct. Dec. 08, 2011) (holding that where the employer sent plaintiff a rejection letter and its records further reflected that plaintiff's application was rejected, plaintiff suffered an adverse action). Contrary to Complainant's allegations, the District did not "pass over" his application. (Exhibit A at 4). The District never rejected any of Complainant's multiple applications, either verbally or in writing. Rather, the District's records clearly indicate that Complainant's applications have been maintained amongst all Bus Driver applications received within the same period of time by the Human Resources Office, for future employment consideration. (Exhibit L at 33-40). Therefore, Complainant has failed to show that his applications were rejected at all.

The fourth prima facie element requires a showing that after Complainant's rejection, the position remained open or was filled by someone that was not a member of his protected class. Even if Complainant's allegations were somehow successful in establishing that his applications were rejected on June 4, 2019, it is impossible for him to show that the District has hired any per diem Bus Drivers at all, let alone someone that was not a member of his protected class. See *Taylor v. City of New York*, 207 F. Supp. 3d 293 (S.D.N.Y. 2016) (holding that a female city employee that was never hired as an apprentice construction laborer, despite being qualified for the position and having submitted 14 applications for the position over a 12-year period, none of which were successful, while multiple male applicants were hired over the same period of time in which female employee submitted her applications constituted failure-to-hire discrimination). Contrary to Complainant's allegations, the District has not "hired people who was a lot less qualified than" Complainant. (Exhibit A at 4). Rather, the District has not had any vacancies or hired any Bus Drivers at all since April 26, 2019, well before any of Complainant's applications, including the one he alleges was submitted on May 10, 2019. (Exhibit C). Therefore, Complainant has failed to

*Henry v. Mahopac CSD*
*Case No.: 10203286*
*October 16, 2019*
*Page No.: 5*

show that the District hired a non-African American individual as a Bus Driver following his alleged rejection.

Even if the Complainant were able to establish the *prima facie* elements of a discrimination claim without any adverse action, it is abundantly clear that the District had a legitimate, non-discriminatory reason for not reviewing his application or not calling on Complainant for a road test just yet. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001), *as amended* (June 6, 2001) (Once a plaintiff establishes a *prima facie* case of discrimination, "the burden of production [shifts] to the defendant, who must proffer a 'legitimate, nondiscriminatory reason' for the challenged employment action"). The District's burden to articulate legitimate, non-discriminatory reasons is minimal in that it must only offer an explanation for the complained of actions and need not prove that its actions were non-discriminatory. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 446 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014).

At the time of Complainant's applications and at present, the District employs far more Bus Drivers than they have Buses or Bus Routes available. The District has not reviewed any applications since April 2019. Essentially, the Complainant lacks standing. Complainant has not established any adverse action since both his submissions are still in the pool of Bus Driver applications to be considered for future per diem vacancies. He has failed to sufficiently connect his alleged harm to the alleged discriminatory conduct by the District. This is especially evident in Complainant's failure to plead any kind of harm at all.

Importantly, Complainant has not and cannot provide any specifics as to the alleged disparate treatment. He does not plead any facts regarding similarly situated applicants of other races/colors, other than to vaguely allege that the District "hired people who was a lot less qualified than myself." (Exhibit A at 4). Nor has he alleged any derogatory or discriminatory statements made by any officers of the District at the time of his application. It is clear that there is not even a scintilla of evidence to demonstrate a nexus between the complained of actions and the Complainant's race or national origin. The Complainant's sole support for his claims of discrimination is that he is of a protected class, but this is woefully insufficient to establish a claim of hiring discrimination. Whitting v. Locust Valley Cent. Sch. Dist., 2012 WL 5289617, 9 (E.D.N.Y. Oct. 22, 2012), *citing*, Dorfman v. Doar Comm'ns., Inc., 314 Fed. App'x 389, 390 (2d Cir.2009).

## CONCLUSION

The facts of this matter do not support a finding that the Complainant was discriminated against based on race/color in violation of the New York State Human Rights Law or Title VII. In fact, it is evident that the Complainant has been treated fairly and legally by the District at all times. Accordingly, it is respectfully requested that the Complaint and all allegations of discrimination be rejected and dismissed in their entirety.

*Henry v. Mahopac CSD*
*Case No.: 10203286*
*October 16, 2019*
*Page No.: 6*

We greatly appreciate your time and attention to this matter. Should you have any questions or comments, please do not hesitate to contact us.

Respectfully submitted,

**SILVERMAN & ASSOCIATES**

Stuthi Balaji
Caroline B. Lineen

# Exhibit C

**_Via Personal Delivery_**
_Nadia Dawoud, Human Rights Specialist 1_
_New York State Division of Human Rights_          _November 4, 2019_
_7-11 South Broadway, Suite 314_
_White Plains, NY 10601_

>          _Re:      Garfield G. Henry v. Mahopac Central School District_
>                   <u>_Case No.: 10203286_                                              _._</u>

_Dear Ms. Dawoud,_


_I am writing this letter as a rebuttal to the written response I received from the respondent, dated October16, 2019. I understand that the respondent has refuted everything I stated in my complaint, basically labelling me a liar. I also understand the motivation for doing this, as to admit to the truth would be admitting to inappropriate and discriminatory behavior. I have suffered racial bias, and prejudice by Mahopac Central School District's management._

### _THE FACTS ARE AS FOLLOWS_

_I did filled out an application on May 10, 2019 at the Myrtle Avenue address, and after a few weeks had pass, my friend Medhat Fanous whom we both worked together at another school bus company took me back at the Myrtle Avenue depot as a personal reference to fill out another application. This was June 4,2019, and I can remember quite clearly, as we both walked in the door, Pete (personnel manager) recognize me immediately, and said to me; didn't you filled out an application with us just a few weeks ago? and I said yes, and Pete started looking for the application, without success. At that point Pete told Dave (road test operator) to give me a road test, all these people including lady in the office will be my witness, and if need be would have to testify under oath in a court of law. On my word of honor this is the truth._

_Now the application dated May 10, 2019 is still missing, for I.D. this application will go into the record as complainant Exhibit "Q", and respondent Exhibit "K' is **not** my second application, that application was a do-over, the_

second application that I did was dated June 4, 2019, and respondent Exhibit "K"
was my third application, and a (do-over).
**Garfield G. Henry**
Page two


Exhibit "Q" if found we all will see that both applications had a lot more details
and very consistent except for dates. When I did the application on June 4, 2019, I
didn't have all the information I needed, so I had to do it over, on July 7, 2019. I
didn't have my driver's license and they say come back the next day for the road
test, when I arrived Pete and Dave was out doing road test and the lady in the
office said to wait in the driver's room. There were also another lady waiting there
too and we both start talking. The lady said her friend fill out an application last
week and they called her friend to come in for a road test, I ask her what kind of
license her friend had and she said a class "C", my phone went off indicating Uber
Taxi was calling me to go pick up a rider, and the lady said "you do Uber?" and I
said yes, and she start telling me how hard it was to get Uber Taxi in this area. The
lady asks me if it would be OK to call me to take her to the airport in a week and I
said yes. We exchange phone numbers. Because I was waiting for Pete to return, I
had to ignore the Uber call and disconnect going offline.

When Pete arrived, I handed him my application and he said he was a little
busy, but he will call me sometime the next week. Two days later I called the lady
and ask her if her friend got the job and she said yes. This is what I base my claim
on when I said they hired someone who was less qualified then I am, because this
lady has a class "C" license, and I have a class "B" with (PS) endorsements, and she
got a road test and the job over me. When I was taking the lady to the airport I
was telling her about what had happen to me , and she told me under no
circumstances should I use her friends name, because she don't want them to
retaliate against her friend, I assured her it's OK, because this is confidential.

I love diversity very much, and that's one of the reasons why I do school bus
work, because of the diversity in the staff. Mahopac Central School District is the
only school bus company I have filled out application and don't see not even one
African American. That very first day that I filled out the application on May 10,
2019, not one black man or woman was in the driver's room.

*Garfield G. Henry*
*Page three*

*I represented Jamaica in the Olympics in the 8th British Empire and Commonwealth Games, in 1966, in Springboard Diving event, and this was the greatest day of my life, because of the diversity. There must have been thirty-five country's there. When the Olympics was starting, I was in the National Stadium filled with people from all over the world, signing autographs, the diversity was excellent. The next great moment of my life was in 1995 when I became a United States Citizen, because that courthouse in White Plains, New York had ever single nationality in that room, that's the kind of environment I like to be in. I feel very bad whenever I witness discrimination, because it's not fair to treat people differently, all men created equal. I am hoping this case will end the discrimination, bias and prejudice I experience at Mahopac Central School District, located at 100 Myrtle Ave, Mahopac, NY 10541.*

*School Bus Driving is an art, and a lot of responsibility, and also require a lot of discipline, just to execute a triple twisting 3 ½ somersault from a thirty five (35) feet 10 meter Plat form tower, require a lot of discipline, and perseverance, I mention this because if any company from any organization adhere to discipline discrimination will be a thing of the pass. One thing I would like, M.C.S.D. management do is tell us all what's the percentage of African American bus drivers they have.*

*Now not because they have an EEO policy that means they will live up to it, that policy is just in their file but, "actions speak louder than just words". When I was filling out the first application referred to as Exhibit "Q" the drivers room had a lot of drivers, and I ask one of them "how come I don't see any African American, Hispanic and other nationality, and the answer was, "because there is none. This driver been working there for three years, and never sees any blacks, or Hispanics driving any of their vehicles. This is a shame and disgrace, this is the 20th century. If this case gets to Federal Court, I will have a lot of people at the Myrtle Avenue*

**Garfield G. Henry**
Page four


yard to answer a lot of questions under oath. This is how I will prove the lies and cover-up that's been going on. And I am hoping they hasn't retaliated against my friend Medhat Fanous for bringing me there to fill out the application. We both worked together at another school bus company, and we both know that at the beginning of ever school year, school bus companies always want drivers. That criteria that they describe about bringing in staff first for an opening is BALONEY.

I been driving school bus for over thirty-five (35) years, and I know how this thing works. I used to be a dispatcher at a bus company for six (6) years, and every year we had to hire new drivers. And even if you have a Union, hypotactically speaking, you have one hundred drivers, and you have say two (2) openings, the most senior drivers look at the positions and if it's a better run than they have they get to pick first, but no matter how far down the line the picking goes, you still going to have two positions to fill and at that point you have to go outside for help. And another thing, no matter how many applications on file, 9 out of 10 times most or all those drivers have jobs and is not available, that's why you glad to hire the guy who just walk in the door. Another very important thing, as a dispatcher I also use to train new drivers who just have a permit, and whenever you take a driver out on a road test, is because you have an opening. That's why I felt so good when Pete offered to give me a road test. And even Medhat felt good too, I can remember him saying to me; it's great to know we will be working together again. But now that I know that these people are prejudice, Pete must be putting on a show in front of Medhat, because he had to know Medhat knew he had openings.

That day I left my driver license at home by accident, so they said come back the next day, I keep going back week after week without ever getting that road test. Medhat kept asking me for a few days after that if I ever got the test, and I told him no, I could hear the disappointment in his voice. When they say road test wouldn't be given yet, I have Medhat as my witness, and Dave, and that lady in

the office. However, Dave (Road Test operator) and that lady wouldn't remember because of my case against the District.

**Garfield G. Henry**
*Page five*

### CONCLUSION

When I turned in my third application dated July 7, 2019 as my replacement for the application dated June 4, 2019, I also gave Pete a copy of my certificate enclosed as complainant Exhibit "R", this certificate shows my qualifications as a certified Competitive Diving Instructor, with qualifications in; Deep Water Rescue and Spinal Injury Management(Physical Skills Demonstrated), CPR qualified. The reason why I showed Pete this I wanted him to know, when you are dealing with kids, it's always good to have drivers who can help in case of an emergency.

School Bus driving is a part-time split shift nine months occupation, and that's the reason why every company **must** hire new drivers off the street every year, no exceptions, that's the way it is, and anyone who try to say it's not so, is fabricating the truth, period.

About 80% of what the respondent stated in their response is a fabrication and because of that The Division of Human Rights should grant me a favorable judgement in this complaint and dismissed their response in its entirety.

I greatly appreciate your time and attention in this very important matter. Should you have any questions at all, please do not hesitate to contact me

Respectfully submitted

Garfield G. Henry

# Exhibit
# D



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

GARFIELD G. HENRY,

Complainant,

v.

MAHOPAC CENTRAL SCHOOL DISTRICT,

Respondent.

---

DETERMINATION AFTER
INVESTIGATION

Case No.
10203286

Federal Charge No. 16GB904749

On 8/14/2019, Garfield G. Henry filed a verified complaint with the New York State
Division of Human Rights ("Division"), charging the above-named Respondent with an unlawful
discriminatory practice relating to employment because of race/color in violation of N.Y. Exec.
Law, art. 15 ("Human Rights Law").

After investigation, the Division has determined that it has jurisdiction in this matter and
that <u>PROBABLE CAUSE</u> exists to believe that the Respondent has engaged in or is engaging in
the unlawful discriminatory practice complained of.

Pursuant to the Human Rights Law, this matter is recommended for public hearing.  The
parties will be advised of further proceedings.

Dated:      February 14, 2020
            White Plains, New York

STATE DIVISION OF HUMAN RIGHTS

By:

Linda Fenstermaker
Regional Director

## Information to the Parties
## Following Determination of Probable Cause

The New York State Division of Human Rights ("Division") is the administrative agency charged with enforcing the New York State Human Rights Law. The Division investigates complaints of discrimination, determines whether there is probable cause to believe that discrimination has occurred, and conducts a public hearing of the complaint where probable cause is found. Probable cause has been found in this case, and the matter will now proceed to a public hearing before an Administrative Law Judge.

If a Complainant does not have a private attorney, the Division will assign an attorney to present the case in support of the complaint. The Division attorney at all times represents the Division, not the Complainant personally. Substitutions and reassignments of Division attorneys and Administrative Law Judges are within the Division's discretion.

The Division generally schedules public hearings for two consecutive days, which may be allocated with one day each for the presentation of Complainant's and Respondent's cases. There is no formal discovery. Parties may exchange document and witness lists at the preliminary conference, which will take place during the first hour of the first day of the public hearing.

Prior to receiving the notice setting out the date and time of the public hearing, parties may receive notice of a Pre-Hearing Settlement Conference, which will be scheduled several weeks before the public hearing. If Respondent wishes to make an offer of settlement prior to that time, Respondent should contact the Hearing Attorneys Unit at (718) 741-8396.

The Division has its own Rules of Practice which can be found on the Division's website, www.dhr.ny.gov. The New York Civil Practice Law and Rules and the Federal Rules of Procedure and Evidence are inapplicable to Division proceedings. Please cite to New York State case law wherever possible in all submissions to the Division.

The parties have a continuing obligation to keep the Division advised as to any changes in the case including:

1.      Changes in name, address and/or telephone number of the parties and successors in interest.

2.      Commencement of proceedings in another forum.

3.      Settlement of the case.

Any of the above information should be timely provided to the Division, IN WRITING on the attached form to the following by mail or fax:

**New York State Division of Human Rights**
**Attn: Chief Calendar Clerk**
**One Fordham Plaza, 4th Floor**
**Bronx, New York 10458**
**Fax: (718) 741-8333**

If the Complainant wishes to seek dismissal of this matter to proceed in an alternate forum, an application should be filed with the Chief Calendar Clerk at the above listed address, preferably within twenty (20) days of the date of this determination.

The parties also have a continuing obligation to maintain certain information, records, etc., as follows:

1.   Parties must keep track of the whereabouts of their witnesses.

2.   Parties are obligated to identify and preserve all evidence relating to the case, including evidence relating to any incidents which relate to the case that occur after the Division makes a finding of probable cause, and including all evidence whether for or against that party's interests.

3.   Parties are responsible for recording and keeping evidence relating to any increase or reduction in damages.

Finally, if you would like to request a copy of the investigation file, please do so promptly.  Put your request in writing to:

**New York State Division of Human Rights**
**Attn: FOIL Officer**
**One Fordham Plaza, 4th Floor**
**Bronx, New York 10458**
**Fax: (718) 741-8256**
**Email: foil@dhr.ny.gov**

Please note that your request for documents, or the Division's response or date of response thereto, will not affect the date of the hearing, and cannot be used to request a postponement or rescheduling of the hearing.  Costs for copying, established by statute, will apply.

## FREQUENTLY ASKED QUESTIONS

The New York State Human Rights Law and the Division's Rules of Practice outline the policies and procedures that govern hearings administered by the New York State Division of Human Rights.  The Law and the Rules are available on the Division's website at www.dhr.ny.gov.  Parties may consult with their own attorneys on questions about and interpretations of the Law and/or the Rules.  The following are general responses to frequently asked questions.  The responses are not legal advice, and should be used for informational purposes only.

Information to the Parties
Page 3

## Before the Public Hearing

1.  **I recently received a "Determination After Investigation" letter from the Division, stating that there is probable cause to believe that discrimination has occurred in my case and that the case will be scheduled for a public hearing. What does this mean and when will the case be scheduled for a hearing?**

    Where the Division finds probable cause after investigation, the Human Rights Law requires that the entire case be heard at a public hearing before an administrative law judge, where all relevant evidence is presented and the testimony of witnesses is taken under oath and subject to cross-examination. You will receive written notice from the Division of the hearing date, time, and location of the hearing. The hearing usually is scheduled to occur 4 to 6 weeks from the date of the written notice. Prior to receiving this notice, you may receive notice of a Pre-Hearing Settlement Conference, where your case will come before an Administrative Law Judge for the purpose of exploring settlement.

2.  **Do we pick the dates for the hearing?**

    No. The Division selects dates for a public hearing, and notifies the parties in writing through the notice of hearing.

3.  **What do I bring to the hearing, such as documents, witnesses, etc.?**

    The parties should identify and bring all documents and witnesses relevant to their claims and/or defenses. The parties should review the notice of hearing, which is issued via mail.

4.  **Now that the case is scheduled for a hearing, what happens next?**

    The case proceeds to a public hearing on the scheduled date. The Complainant may consult with his or her own attorney. If Complainant does not have an attorney, please wait to be contacted by a Division attorney, who will present the case in support of the complaint. Further, the parties should review the notice of hearing, which is issued via mail.

5.  **When should an answer be filed and can it be faxed?**

    An answer should be served by the respondent(s) on all parties and the Administrative Law Judge at least two (2) business days before the public hearing. This is a statutory requirement. All formal papers, including but not limited to the answer, must be submitted via personal service, mail, or fax (with an original to follow) for proper docketing and timely filing. Formal papers submitted via electronic mail are deemed courtesy copies and do not constitute proper service.

Information to the Parties
Page 4

## Adjournments

6.      **What should I do if I have a conflict with the hearing date that is scheduled?**

You should submit, as early as possible, a written request for an adjournment of the hearing, stating the basis for your request, to all parties and the Administrative Law Judge.

7.      **On what basis will the judge grant an adjournment? Will I receive a letter with new dates?**

Adjournment of a public hearing is granted only for actual engagement before a higher tribunal on the specific dates of the public hearing, or for other good cause shown as determined by the Division. If a case is adjourned, the Division will schedule a new hearing date.

## Public Hearing

8.      **What happens if I do not appear for the hearing?**

A complainant's failure to appear at a public hearing may result in a dismissal of a complaint, and a respondent's failure to appear may result in a default finding against a respondent.

9.      **How long is the hearing?**

Public hearings are generally scheduled for two (2) days.

10.      **Can I speak with the Judge?**

*Ex parte* communication (*i.e.*, by only one party) with the judge assigned to the case is strictly prohibited. The parties may jointly request a conference with a judge through the Office of Administrative Law Judges.

## Additional Information

11.      **I have more questions. Where can I call for more information?**

If necessary, you may call Shirese Taylor, Chief Calendar Clerk, at (718) 741-8400. We do request that you call only if the situation is urgent. Please do not call to ask the status of your case; the Division will contact *you* at the appropriate time. Frequent telephone contact can interfere with the prompt processing of your hearing. Please do not call your regional office; they will not have information on the hearing process.

# NEW YORK STATE
# DIVISION OF HUMAN RIGHTS

TO:      Files                                    REGION:  White Plains

FROM:  Linda Fenstermaker                    DATE: February 10, 2020
         Regional Director

SDHR CASE NO: 10203286-19-E-R-E

Federal Charge No. 16GB904749

SUBJECT:     Garfield G. Henry v. Mahopac Central School District

---

### FINAL INVESTIGATION REPORT AND BASIS OF DETERMINATION

## I.     CASE SUMMARY

This is a verified complaint, filed by Complainant, Garfield G. Henry, on Wed 8/14/2019.
Complainant who is Black charges Respondent with unlawful discriminatory practices in relation
to employment because of race/color.

## II.    SUMMARY OF INVESTIGATION

Complainant's Position:

Complainant claimed that he was denied employment because of his race.  Complainant
submitted an employment application on three different occasions but was not called for an
interview.

Respondent's Position:

Respondent stated that it hires bus drivers for full-time, part-time and per diem positions.  Full-
time and part-time bus drivers are unionized under the United School Workers of Mahopac
(USWOM), and the terms and conditions of their employment, including hiring and promotions
are determined by their Collective Bargaining Agreement (CBA).  When a full-time or part-time
bus driver position becomes vacant, the CBA dictates that Respondent consider applicants who
are employees for Respondent for the vacancy before outside applicants are considered.

Respondent stated that although the instruction for the application completed by Complainant
stated that it is "continuously accepting applications for Schools Bus Drivers" and that "based on
the current staffing of the district, applicants will be contacted," it denied that it was actively
seeking applicants when Complainant submitted the application for a per diem bus driver

position.  Respondent denied that Complainant submitted an employment application in May 2019.  Respondent however acknowledged that Complainant applied for the bus driver position twice (June 4 and July 7, 2019), but then failed to follow the application instructions to submit the applications to the Human Resources Office instead of submitting the applications to the Transportation Unit.  Respondent however maintained Complainant's applications and all other applications submitted between February 2019 to September 2019 for future per diem bus driver vacancies.

Since 2018, Respondent hired a total of nine per diem Bus Drivers. Based on the needs of the District in early 2019, Respondent hired two per diem Bus Drivers: Medhat Fanous (Middle Eastern) and Jessica Sanchez (Hispanic). At that time, the District was still reviewing applications received in October 2018 because per diem applications are reviewed in the order that they are received. Despite receiving their applications only two days apart, due to the needs of the District, Ms. Sanchez was hired nearly two months after Mr. Fanous. Respondent has not hired any applicants or had any vacancies for per diem Bus Drivers since April 2019.

Complainant's Rebuttal:

Complainant noted that Medhat Fanous (a per diem driver for Respondent) acknowledged that Respondent had no Black Drivers or Monitors.  Complainant claimed that a lot of Black individuals applied for positions with Respondent, but no one was hired, including Complainant. Complainant further noted that Medhat Fanous, who was present when Complainant submitted his application in June 2019, informed him that Respondent had no Black drivers.  Complainant stated that the individuals he interacted with at Respondent's facility, "Pete," the manager; "Dave," the road test operator; and "Linda," office worker, are all White.  Complainant did not deny that his two applications submitted in June and July 2019 were missing information. Complainant however stated that Respondent misplaced the employment application he (Complainant) submitted in May 2019, and that this application was fully completed. Complainant handed in the first job application on May 10, 2019, when Manager Pete then said that he was "a little busy" and would call Complainant the following week.

A few weeks after submitting his first application, Complainant, as well as his friend (Medhat Fanous, who is an employee of Respondent) went to Respondent's facility to inquire about the job application he (Complainant) submitted on May 10, 2019.  Manager Pete recognized Complainant and said, "Didn't you filled out an application with us just a few weeks ago?". Manager Pete however was not able to locate Complainant's first application, and thereafter he informed the road test operator Dave, to complete the road test with Complainant.  Complainant acknowledged that he submitted the second job application without the information required. Therefore, on July 7, 2019, Complainant returned to Respondent's facility to complete his third job application.  Complainant acknowledged that he did not have his driver's license to take the road test and he was asked to return the following day.  When Complainant returned the following day, he met with a female individual (unknown name) who informed him that her friend who had a class "C" license, submitted a job application last week and she was called in to take the road test.  Complainant stated that he exchanged "phone numbers" with the female individual to be utilized for future business.  Two days later, Complainant contacted the female individual and she informed him that her friend was hired for the position of a bus driver.  The

female individual however requested to keep the friend's contact information confidential for fear of retaliation. Complainant believed that Respondent denied him the opportunity to be hired as a bus driver because he is Black.

Investigator's Observations:

During a telephone conference, Complainant stated the following: Complainant stated that he did not know if Respondent hired drivers and monitors who are more qualified than him. Complainant said that Respondent has no Black Drivers or Monitors. Complainant stated that a lot of Black individuals applied for positions with Respondent, but no one was hired, including Complainant. No comment or reference however was made regarding his race. Complainant was asked and he stated that he did not see any Black individuals submit an employment application for the position of a bus driver. Complainant said that he was told by Medhat Fanous (an employee who he met when he submitted his application in July 2019 that Respondent did not hire Black drivers. Complainant did not know of others who had applied and who did not receive the position. Complainant stated that he did not keep copy of the first job application (May 2019). Complainant stated that the individuals he met at Respondent's facility ("Pete," the manager; "Dave," the road test operator, and "Linda," the office worker) are all White.

The Division interviewed Medhat Fanous (Complainant's witness) who stated the following: Mr. Fanous self-identified himself as an African American - dark skin Egyptian. Mr. Fanous acknowledged that he was present on one occasion when Complainant was trying to check the status of his application. Mr. Fanous could not remember the date when he was present with Complainant. Mr. Fanous acknowledged that Pete recognized Complainant and said to him "didn't you filled out an application with us just few weeks ago?" Mr. Fanous stated that his first application was lost and after applying the second time, he was hired. Mr. Fanous denied telling Complainant that Respondent's workforce included no Black drivers. Mr. Fanous further refused to disclose if Respondent's workforce included Black drivers. Mr. Fanous stated that he did not believe that Complainant could be hired as a bus driver for the children, because he was involved in many accidents previously when he was working with the prior employer. Mr. Fanous had also worked with Complainant and he was aware of the accidents. Mr. Fanous did not have any additional information to add about this matter.

The Division attempted to contact Jessica Sanchez. To date, Ms. Sanchez has not responded.

Respondent provided and the Division reviewed the following:
1- Respondent's list of all active bus drivers (Exhibit E), which shows that Respondent's hired 7 drivers in 2018, and 2 in 2019. Respondent noted it did not maintain records of the race composition of its drivers. Respondent further noted that "none of the actively employed Bus Drivers are African American."
2- Copy of the bus driver's application which stated that Respondent is "continuously accepting applications" for School Bus Drivers, and that "based on the current staffing of the district, applicants will be contacted." (Exhibit G).
3- Since 2018, Respondent hired a total of 9 per diem Bus Drivers (7 in 2018 and 2 in 2019). In early 2019, Respondent hired two per diem Bus Drivers: Medhat Fanous (Middle Eastern) and Jessica Sanchez (Hispanic). Complainant and several other

individuals applied for the position of per diem bus drivers, however Respondent's record shows that no per diem bus drivers had been hired since April 2019. (Exhibit M).

4- Bus driver application for Medhat Fanous, dated October 6, 2018. (Exhibit H).

5- Bus driver application for Jessica Sanchez. The Division notes that Respondent hired Ms. Sanchez 2 months after Respondent hired Mr. Fanous, dated October 18, 2018. (Exhibit I).

Submitted by: _____
Nadia Dawoud
Human Rights Specialist I

## III.   BASIS FOR DETERMINATION

A review of the record reveals that there are material issues of fact and credibility which are best resolved at a public hearing before an Administrative Law Judge where testimony is taken under oath, and witnesses are subject to cross examination, and a full record is made.

To support his assertion, Complainant claims that he submitted multiple applications to Respondent to work as a bus driver and was never called for an interview. Complainant claims that Respondent has not hired any Black drivers and was told by a bus driver employee for Respondent that Respondent has not hired any Black driver and that there are no Black drivers on staff. Complainant believed that Respondent's failure to hire him was due to his race.

On the other hand, Respondent denied engaging in any pattern of unlawful discrimination against Complainant because of his race. Respondent denied that Complainant submitted an employment application in May 2019. Respondent however acknowledged that Complainant applied for the bus driver position twice (June 4 and July 7, 2019), but then failed to follow the application procedures to submit them to the Human Resources Office instead of the Transportation Unit. Respondent stated that although the instruction for the application completed by Complainant stated that it is "continuously accepting applications for School Bus Drivers" and that applicants are contacted "based on the current staffing of the district," it denied that it was actively seeking applicants when Complainant submitted the application for a per diem bus driver position. Respondent claimed that it maintained Complainant's applications and all other applications submitted between February 2019 to September 2019 for future per diem bus driver vacancies.

Probable cause to believe that unlawful discrimination occurred exists when, after giving credence to the complainant's version of the facts, some evidence of discrimination exists. Here, the record shows and Respondent admits that it received Complainant's multiple job applications for the bus driver position. The record also shows that Complainant personally appeared at Respondent's facility to submit his application, and while there, was offered an opportunity to perform a road test. Complainant asserts that Respondent has not hired any Black drivers and that an employee for Respondent confirmed the absence of any Black drivers. The record further includes an interview of a bus driver for Respondent who declined to comment if he had told Complainant that Respondent did not hire Black drivers. This witness also declined to report

- 4 -

whether Respondent's staff of drivers included any who are Black. Finally, Respondent acknowledged that none of its drivers are Black. Complainant asserts that he was told by Respondent's employee that Respondent recently hired a driver shortly after the driver submitted her application. Given the conflicting record, there are material issues of fact which are best resolved at a public hearing before an administrative law judge, where testimony is taken under oath, witnesses are subject to cross-examination and a full record is made.

Legal standards regarding probable cause determinations require that, once the investigation is complete, all remaining genuine issues of fact must be hypothetically resolved in favor of the Complainant. A determination of probable cause is not a final adjudication, but merely a determination that there should be a formal hearing on the matter.

It is recommended that the matter proceed to public hearing where the issues can best be resolved by an administrative law judge and where all the parties will obtain a full and fair opportunity to present their contentions and testimony under oath.

Reviewed & Approved: _____

Linda Fenstermaker
Regional Director

## IV.   DETERMINATION

Based on the foregoing, I find Probable Cause to support the allegations of the complaint.

_____

Linda Fenstermaker
Regional Director

# Exhibit E

Garfield G. Henry
5 Baker Street, A
Mohegan Lake, NY 10547
E-mail: henryoarfield44@icloud.com
Direct Dial: 914-334-0411

April 14, 2021

**New York State Division of Human Rights**
**Atten: Administrative Law Judge Martin Erazo, Jr.**
**One Fordham Plaza, 4th Floor**
**Bronx, New York 10458**

Re:  **Garfield G. Henry v. Mahopac Central School District**
     **Case No.: 10203286**

Dear Mr. Martin Erazo, Jr.

Please be advised, I am requesting an administrative convenience dismissal to file in Federal Court, in the above referenced case. Please expedite this request so that I can move forward with this case. EEOC Federal Charge No. **16GB904749.** Thank you for your understanding in this very important matter, and I look forward to hearing from you soon. I would like to file this case with the court immediately, so please notify me either by phone listed above, or email

Sincerely,

Garfield G. Henry

CC: Silverman & Associates
    445 Hamilton Ave Suite 1102
    White Plains, NY 10601

    Mahopac Central School District
    179 E. Lake Boulevard
    Mahopac, NY 10541

# Exhibit F



**Division of
Human Rights**

**NEW YORK STATE
DIVISION OF HUMAN RIGHTS**

---

NEW YORK STATE DIVISION
OF HUMAN RIGHTS
   on the Complaint of

**GARFIELD G. HENRY,**

                      Complainant,

           v.

**MAHOPAC CENTRAL SCHOOL DISTRICT,**

                     Respondent.

**NOTICE AND
FINAL ORDER**

Case No. 10203286

---

Federal Charge No. 16GB904749

     **PLEASE TAKE NOTICE** that the attached is a true copy of the Recommended Order

of Dismissal for Administrative Convenience ("Recommended Order"), issued on May 27, 2021,

by Martin Erazo, Jr., an Administrative Law Judge of the New York State Division of Human

Rights ("Division"). An opportunity was given to all parties to object to the Recommended

Order, and all Objections received have been reviewed.

     <u>**PLEASE BE ADVISED THAT, UPON REVIEW, THE RECOMMENDED**</u>

<u>**ORDER IS HEREBY ADOPTED AND ISSUED BY THE HONORABLE JOHNATHAN**</u>

<u>**J. SMITH, INTERIM COMMISSIONER, AS THE FINAL ORDER OF THE NEW**</u>

<u>**YORK STATE DIVISION OF HUMAN RIGHTS ("ORDER")**</u>. In accordance with the

Division's Rules of Practice, a copy of this Order has been filed in the offices maintained by the

Division at One Fordham Plaza, 4th Floor, Bronx, New York 10458. The Order may be

inspected by any member of the public during the regular office hours of the Division.

**PLEASE TAKE FURTHER NOTICE** that any party to this proceeding may appeal this

Order to the Supreme Court in the County wherein the unlawful discriminatory practice that is

the subject of the Order occurred, or wherein any person required in the Order to cease and desist

from an unlawful discriminatory practice, or to take other affirmative action, resides or transacts

business, by filing with such Supreme Court of the State a Petition and Notice of Petition, within

sixty (60) days after service of this Order. A copy of the Petition and Notice of Petition must

also be served on all parties, including the General Counsel, New York State Division of Human

Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. Please do not file the original

Notice or Petition with the Division.

**ADOPTED, ISSUED, AND ORDERED.**

DATED:  **June 14, 2021**
        Bronx, New York

JOHNATHAN J. SMITH
INTERIM COMMISSIONER

- 2 -



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS
  on the Complaint of

**GARFIELD G. HENRY,**
                  Complainant,

          v.

**MAHOPAC CENTRAL SCHOOL DISTRICT,**
                  Respondent.

**RECOMMENDED ORDER
OF DISMISSAL FOR
ADMINISTRATIVE
CONVENIENCE**

Case No. **10203286**

---

Federal Charge No. 16GB904749

### PROCEEDINGS IN THE CASE

On August 14, 2019, Complainant filed a verified complaint with the New York State Division of Human Rights ("Division"), charging Respondent with unlawful discriminatory practices relating to employment in violation of N.Y. Exec. Law, art. 15 ("Human Rights Law").

After investigation, the Division found that it had jurisdiction over the complaint and that probable cause existed to believe that Respondent had engaged in unlawful discriminatory practices. The Division thereupon referred the case to public hearing.

The case was assigned to Martin Erazo, Jr., an Administrative Law Judge ("ALJ") of the Division. The Division was represented by Michael Adeyemi, Esq., Senior Attorney. Respondent was represented by the Law Offices of Silverman & Associates, Stuthi Balaji and Caroline B. Lineen, Esqs., of counsel.

In a letter dated April 14, 2021, Complainant requested dismissal of the complaint so Complainant could commence a federal action. On May 18, 2021, Respondent's attorney stated that Respondent did not object to Complainant's request.

Pursuant to Section 297.3(c) of the Human Rights Law, the complaint should be dismissed on the grounds of administrative convenience. The Complainant intends to pursue remedies in federal court, in which forum all the issues concerning the question of discrimination charged can be resolved.

ORDERED, that the case be dismissed for administrative convenience.

Dated: May 27, 2021
      Buffalo, New York

Martin Erazo, Jr.

Martin Erazo, Jr.
Administrative Law Judge

- 2 -

TO:
Complainant
Garfield G. Henry
5 Baker Street, Apt. A
Mohegan Lake, NY 10547

Respondent
Mahopac Central School District
Attn: Anthony DiCarlo, Superintendant of Schools/Melody LaRocca, Secretary to
Superintendent
179 E. Lake Boulevard
Mahopac, NY 10541

Respondent Attorney
Stuthi Balaji, Esq.
Silverman & Associates Attorneys at Law
445 Hamilton Avenue, Suite 1102
White Plains, NY 10601

Respondent Attorney
Caroline B. Lineen, Esq.
Silverman & Associates Attorneys at Law
445 Hamilton Avenue, Suite 1102
White Plains, NY 10601

Hon. Letitia James, Attorney General
Attn: Civil Rights Bureau
28 Liberty Street
New York, New York 10005

State Division of Human Rights
Robert Goldstein, Director of Prosecutions
Michael Adeyemi, Senior Attorney
Lilliana Estrella-Castillo, Chief Administrative Law Judge
Martin Erazo, Jr., Administrative Law Judge
Michael Swirsky, Litigation and Appeals
Caroline J. Downey, General Counsel
Melissa Franco, Deputy Commissioner for Enforcement
Peter G. Buchenholz, Adjudication Counsel
Matthew Menes, Adjudication Counsel